**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**DIV005 LLC,**<br><br>**Debtor.** | **CHAPTER 11**<br><br>**CASE NO. 22-21202-jrs** |

**IN THE UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

| | |
|---|---|
| **IN RE:**<br><br>**METAL BENDERS USA, LLC,**<br><br>**Debtor.** | **CHAPTER 11**<br>**SUBCHAPTER V**<br>**CASE NO. 22-21201-jrs** |

# SECOND AMENDED JOINT PLAN OF REORGANIZATION

**Dated this 15th day of May, 2023**

**Filed by:**

**Div005 LLC**
**Metal Benders USA, LLC**

Attorneys for Debtor
Cameron M. McCord
Thomas T. McClendon
Jones & Walden, LLC
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300

COME NOW, Div005 LLC ("Div005" and Metal Benders USA, LLC ("Metal Benders"), Debtors and Debtors in possession in the above-captioned cases (Div005 and Metal Benders collectively, "Debtors"), and, pursuant to sections 1121 and 1123 (as to Div005) and 1190 (as to Metal Benders) of title 11 of the United States Code (the "Bankruptcy Code") and the Rule 3016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), propose this Second Amended Joint Plan of Reorganization (the "Plan") for the resolution of the Claims against Debtors. Debtors are the proponent of this Plan within the meaning of sections 1129 and 1189 of the Bankruptcy Code.

## Article 1
## Introduction

1.1 Disclosure Statement. Contemporaneously with the filing of the Plan, Div005 filed an Second Amended Disclosure Statement for the Joint Plan of Reorganization as required by section 1125 of the Bankruptcy Code. The Disclosure Statement contains Debtors' history, financial information regarding Debtors and their assets, and a solicitation of acceptances of this Plan.

1.2 Property and Claims. This Plan deals with all property of Debtors and provides for treatment of all Claims against Debtors and their property.

1.3 Substantive Consolidation. Debtors have filed a Motion to Substantive Consolidate Metal Benders USA, LLC with Div005 LLC. Thus, the assets of and claims against each Debtor are treated together under this Joint Plan.

## Article 2
## Definitions and General Provisions

For the purposes of this Plan, except as otherwise expressly provided or unless the context otherwise requires, all capitalized terms not otherwise defined shall have the meanings ascribed to them in this Article of the Plan. Any term that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term therein.

2.1 The following terms, when used in this Plan, shall have the following meaning:

2.1.1. "*Administrative Expense Claim*" means a Claim for payment of an administrative expense entitled to priority under section 507(a)(2) of the Bankruptcy Code.

2.1.2. "*Allowed Claim*" shall mean a Claim or any portion thereof that is enforceable against a Debtor or enforceable against the property of a Debtor under sections 502 or 503 of the Bankruptcy Code.

2.1.3. "*Allowed Secured Claim*" shall mean the amount of the allowed Claim held by parties secured by property of a Debtor which is equal to the amount provided by the Plan unless such other amount is stipulated as constituting the allowed secured claim between the parties, or such amount as the Bankruptcy Court allows.

2.1.4. "*Allowed Unsecured Claim*" shall mean Allowed Claims which are not allowed administrative, priority, or secured claims.

2.1.5. "*Assets*" means, collectively, all of the property, as defined by section 541 of the Bankruptcy Code, of the Estate of a Debtor (including without limitation, all of the assets, property, interests (including equity interests) and effects, real and personal, tangible and intangible, including all Avoidance Actions), wherever situated as such property exists on the Effective Date or thereafter.

2.1.6. "*Avoidance Action*" means any claim or cause of action of the Estate arising out of or maintainable pursuant to sections 502, 510, 541, 542, 543, 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code or any other similar applicable law, regardless of whether such action has been commenced prior to the Effective Date.

2.1.7. "*Ballot*" means each of the ballot forms that are distributed with the Plan to Holders of Claims included in the Classes that are Impaired under this Plan and are entitled to vote.

2.1.8. "*Bankruptcy Case*" means the chapter 11 case initiated by a Debtor's filing on the Filing Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code.

2.1.9. "*Bankruptcy Code*" means title 11 of the United States Code.

2.1.10. "*Bankruptcy Court*" means the United States Bankruptcy Court for the Northern District of Georgia, Gainesville Division.

2.1.11. "*Bankruptcy Rules*" means, collectively, the Federal Rules of Bankruptcy Procedure.

2.1.12. "*Bar Date*" means February 27, 2023, the date the Court established as the deadline for nongovernmental entities to file a proof of claim pursuant to docket entry number 100) (the "Bar Notice"). The terms of the Bar Notice will continue in full effect after the Effective Date.

2.1.13. "*Business Day*" means any day on which the commercial banks are required to be open for business in Atlanta, Georgia and which is not a weekend or legal holiday recognized by the Bankruptcy Court or the Superior Courts of the State of Georgia.

2.1.14. "*Cash*" means legal tender of the United States of America and equivalents thereof.

2.1.15. "*Causes of Action*" means all Avoidance Actions and any and all of Debtor's rights based upon actions, suits, accounts, agreements, promises, rights to payment and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable directly or derivatively, in law, equity, or otherwise.

2.1.16. "*Chapter 11*" means chapter 11 of the Bankruptcy Code.

2.1.17. "*Claim*" means a claim against a Debtor whether or not asserted, as defined in section 101(5) of the Bankruptcy Code.

2.1.18. "*Classes*" means a category of Claims described in this Plan.

2.1.19. "*Confirmation Date*" means the date on which the Bankruptcy Court enters the Confirmation Order.

2.1.20. "*Confirmation Hearing*" means the hearing before the Bankruptcy Court held to consider confirmation of this Plan and related matters including valuation of any collateral securing any secured claim under section 1129 of the Bankruptcy Code, as such hearing may be continued.

2.1.21. "*Confirmation Order*" means the order confirming this Plan pursuant to section 1129 and 1191 of the Bankruptcy Code that the Bankruptcy Court enters, which shall be in all respects reasonably acceptable to Debtors.

2.1.22. Creditors' Committee or Committee shall mean the Official Committee of Unsecured Creditors in the Debtor's Chapter 11 case.

2.1.23. "*Debtor Div005*" or "*Div005*" means Div005 LLC.

2.1.24. "*Debtor Metal Benders*" or "*Metal Benders*" means Metal Benders USA, LLC.

2.1.25. "*Debtors*" means both Div005 and Metal Benders, the debtors in these Bankruptcy Cases.

2.1.26. "*Disallowed Claim*" means a Claim or any portion thereof that: (i) has been disallowed by a Final Order, (ii) is listed in any of Debtor's Schedules at zero, unknown, contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court, or (iii) is not listed in Debtor's Schedules and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court.

2.1.27. "*Disputed Claim*" means, with reference to any Claim, a Claim or any portion thereof, that is the subject of an objection timely filed in the Bankruptcy Court and which objection has not been withdrawn, settled or overruled by a Final Order of the Bankruptcy Court.

2.1.28. "*Distribution*" means any distribution by Debtors or reorganized Debtors to a Holder of an Allowed Claim.

2.1.29. "*District Court*" means the United States District Court for the Northern District of Georgia, Atlanta Division.

2.1.30. "*Div005 Case*" means Case No. 22-21202-jrs.

2.1.31. "*Effective Date*" means the Confirmation Date.

2.1.32. "*Estate*" means, with regard to each Debtor, the estate that was created by the commencement by each Debtor of each Bankruptcy Case pursuant to section 541 of the Bankruptcy Code, and shall be deemed to include, without limitation, any and all rights, powers, and privileges of such Debtor and any and all interests in property, whether real, personal or mixed, rights, causes of action, avoidance powers or extensions of time that such Debtor or such estate shall have had as of the commencement of the Bankruptcy Case whether by virtue of sections 541, 544, 545, 546, 547, 548, 549 or 550 of the Bankruptcy Code, or otherwise.

2.1.33. "*Executory Contract or Unexpired Lease*" means all executory contracts and unexpired leases to which Debtor is a party.

2.1.34. "*Filing Date*" means November 23, 2022.

2.1.35. "*Final Distribution*" means the Distribution by Debtors or reorganized Debtors that satisfies all Allowed Claims to the extent provided in accordance with the Plan.

2.1.36. "*Final Distribution Date*" means the Distribution Date on which the Final Distribution is made.

2.1.37. "*Final Order*" means an order of the Bankruptcy Court, the District Court, or any other court as to which (i) any appeal that has been taken has been finally determined or dismissed, or (ii) the time for appeal has expired and no appeal has been filed timely. In the case of an order of the Bankruptcy Court, the time for appeal, for purposes of this definition, shall be the time permitted for an appeal to the District Court.

2.1.38. "*Government Bar Date*" in accordance with 11 U.S.C. § 502, is 180 days after the order for relief (here the Filing Date) and means May 22, 2023.

2.1.39. "*Holder*" means a holder of a Claim or Interest, as applicable.

2.1.40. "*Impaired*" shall have the meaning ascribed thereto in section 1124 of the Bankruptcy Code.

2.1.41. "*Initial Distribution Date*" means the date a payment is first made under the Plan.

2.1.42. "*Interest*" means, in the case of an entity means ownership interests (such as corporate stock, or membership interest) and in the case of Debtor, interest means, Debtor.

2.1.43. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

2.1.44. Litigation Trust shall consist of any and all causes of action belonging to the estate, and retained under the Plan, to be pursued by the Litigation Trustee pursuant to 11 U.S.C. § 1123(b)(3)(B).

2.1.45. Litigation Trustee shall be that person designated to pursue causes of action or claims on behalf of the estate pursuant to 11 U.S.C. § 1123(b)(3)(B). The Litigation Trustee shall have sole discretion to investigate, identify and pursue those claims or causes of action of the bankruptcy estate pursuant to the terms of the Trust Agreement entered into between the Litigation Trustee and the Debtor, and incorporated herein by reference.

2.1.46. "*Metal Benders Case*" means Case No. 22-21201-jrs.

2.1.47. "*Person*" means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, governmental unit (as defined in section 101(27) of the Bankruptcy Code) or other entity.

2.1.48. "*Plan*" means this plan of reorganization as it may hereafter be corrected, amended, supplemented, restated, or modified.

2.1.49. "*Priority Claim*" means a Claim entitled to priority under the provisions of section 507(a) of the Bankruptcy Code other than an Administrative Expense Claim or a Priority Tax Claim.

2.1.50. "*Priority Tax Claim*" means a Claim against Debtors that is of a kind specified in sections 507(a)(8) of the Bankruptcy Code.

2.1.51. "*Professional Compensation*" means (1) any amounts that the Bankruptcy Court allows pursuant to section 330 of the Bankruptcy Code as compensation earned, and reimbursement of expenses incurred, by professionals employed by a Debtor and the fees and expenses of the Subchapter V Trustee, and (2) any amounts the Bankruptcy Court allows pursuant to sections 503(b)(3) and (4) of the Bankruptcy Code in connection with the making of a substantial contribution to the Bankruptcy Case.

2.1.52. "*Record Date*" means any date established in the Confirmation Order or any other Final Order of the Bankruptcy Court for determining the identity of holders of Allowed Claims entitled to Distributions under this Plan. If no Record Date is established in the Confirmation Order or any other order of the Bankruptcy Court prior to the Confirmation Date, then the Record Date shall be the Confirmation Date.

2.1.53. "*Record Holder*" means the Holder of a Claim as of the Record Date.

2.1.54. "*Retained Action*" means all claims, Causes of Action, rights of action, suits and proceedings, whether in law or in equity, whether known or unknown, which Debtors or Debtors' Estate may hold against any Person, including, without limitation, (i) any and all claims and Causes of Action arising under federal or state law, (ii) claims and Causes of Action against any Persons for failure to pay for products or services provided or rendered by Debtor, (iii) claims

and Causes of Action relating to strict enforcement of Debtor's intellectual property rights, including patents, copyrights and trademarks, (iv) claims and Causes of Action seeking the recovery of Debtor's accounts receivable or other receivables or rights to payment created or arising in the ordinary course of Debtor's business, including without limitation, claim overpayments and tax refunds, (v) all Causes of Action that are Avoidance Actions, and (vi) all those claims or causes of action described in Section 7.3 (Preservation of Causes of Action) of the Plan.

As to account receivables, Debtors recognize that there is a receivable owed to Div005 by Metal Benders in the amount of $2,827,456.65. The receivable is not collectable as Metal Benders is no longer operating and is being consolidated with Div005. Additionally, there is a receivable owed to Div005 by SteelX in the amount of $637,512.56. This was not a true receivable but an expense that was booked as an intercompany transaction subject to year-end adjustments. SteelX is an affiliated labor company in Mexico. SteelX has no assets. Moreover, Div005 would have booked this receivable as an expense during its year end true-up but the Bankruptcy Cases were filed prior to year-end.

2.1.55. "*Schedules*" means the Schedules of Assets and Liabilities Debtors filed in these Bankruptcy Cases, as such Schedules may be amended from time to time in accordance with Bankruptcy Rule 1009.

2.1.56. "*Secured Claim*" means a Claim against Debtors to the extent secured by a Lien on any property of Debtors on the Petition Date to the extent of the value of said property as provided in this Plan.

2.1.57. "*Subchapter V Trustee*" means Gary Murphy who was appointed by the United States Trustee under section 1183(a) of the Bankruptcy Code to serve as the Subchapter V trustee in Metal Bender's Bankruptcy Case, and any successor trustee to Mr. Murphy.

2.1.58. "*Substantive Consolidation Date*" means the date that the Court enters an order substantively consolidating Div005 and Metal Benders.

2.1.59. "*Subordinated Claim*" means any Unsecured Claim that is subordinated in priority to all other Allowed Unsecured Claims pursuant to the provisions of section 510 of the Bankruptcy Code or other applicable law.

2.1.60. "*Unimpaired*" means, with respect to a Class of Claims or Interests, any Class that is not Impaired.

2.1.61. "*Unsecured Claim*" means any Claim against Debtors that is not a Secured Claim, a Priority Claim, a Priority Tax Claim, or an Administrative Expense Claim.

2.2 Time. Whenever the time for the occurrence or happening of an event, including payments, as set forth in this Plan falls on a day which is a Saturday, Sunday, or legal holiday under the laws of the United States of America or the State of Georgia, then the time for the next occurrence or happening of said event shall be extended to the next day following which is not a Saturday, Sunday, or legal holiday.

2.3 Events of Default. Unless otherwise specifically provided in a class under the Plan, in the event of a default by Debtors in payments under the Plan or otherwise, the Holder must send written notice ("Default Notice") to Debtors at the addresses of record for Debtors as reflected on the docket for this Bankruptcy Case, unless Debtors has provided the Holder with a written notice of a change of address. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default, as well as notice that Debtors has ten (10) days (in the case of a monetary default) and thirty (30) days (in the case of a non-monetary default) from receipt by Debtors and Debtors' counsel of the Default Notice (or the following business day if the 10th or 30th day does not fall on a business day) to cure such default (and the address for payment, which will accept overnight deliveries, in the event of a monetary default). The Holder must send such Default Notice to Debtors via certified mail or recognized overnight carrier with a copy via email or fax and certified mail to Cameron M. McCord (Jones & Walden, LLC) at the address reflected in the then current directory of the State of Bar of Georgia. Debtors shall have ten (10) days or thirty (30) days (as applicable) from Debtors' and Debtors' counsel's receipt of the Default Notice to cure such default. Receipt by Debtors' Attorney shall not be deemed receipt by Debtors of the required Default Notice. Notwithstanding anything to the contrary in the Plan or otherwise, a default under one Class of Claims or sub-class of Claims shall not constitute a default under any other Class of Claims or sub-class of Claims. (For example, a default under Class 4 shall not constitute a default under Class 1).

2.4 Notices. All notices under the Plan shall be in writing. Unless otherwise specifically provided here in, all notices shall be sent to Debtors via U.S. Certified Mail Return Receipt or by recognized overnight carrier to the address of record for Debtors in this Case, unless Debtors has provided such Holder with written notice of change of address for Debtor, with a copy via email or fax and certified mail Cameron M. McCord at the address reflected in the then current directory of the State Bar of Georgia. Receipt of notice by Cameron M. McCord (Jones & Walden, LLC) shall not be deemed receipt by Debtors of the required notice. Notice to creditors may be provided (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records. Notices shall be deemed received: (i) on the day transmitted if sent via fax or email and (ii) on the day delivered if sent via nationally recognized overnight delivery service or Certified Mail Return Receipt.

## Article 3
## Classification of Claims and Interests

3.1 Summary. The categories of Claims and Interests set forth below classify all Claims against Debtors for all purposes of this Plan. A Claim or Interest shall be deemed classified in a particular Class only to the extent the Claim or Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such

Claim or Interest qualifies within the description of such different Class. The treatment with respect to each Class of Claims and Interests provided for in Article 4 shall be in full and complete satisfaction, release and discharge of such Claims and Interests.

3.2 Classes:

3.2.1 Class 1 shall consist of the Secured or Priority Claim of the Internal Revenue Service.

3.2.2 Class 2 shall consist of the Secured or Priority Claim of the Georgia Department of Revenue.

3.2.3 Class 3 shall consist of the Tax Claims of Governmental Units Not Otherwise Classified.

3.2.4 Class 4 shall consist of the Secured Claim of Winder Property Partners, LLC

3.2.5 Class 5 shall consist of the General Unsecured Claims

3.2.6 Class 6 shall consist of the Unsecured Convenience Class

3.2.7 Class 7 shall consist of Interest Claims

## Article 4
## Treatment of Claims and Interests

A brief summary of the Classes, the treatment of each Class, and the voting rights of each Class is set forth below. A complete description of the treatment of each Class is set forth in Article 4 of the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

Debtors reserve the right to pay any claim in full at any time in accordance with the terms of the Plan (i.e. at the percentage distribution designated in the Plan and including any accrued and unpaid interest, if any) without prepayment penalty.

### 4.1 <u>Class 1: Secured or Priority Claim of the Internal Revenue Service</u>

Debtors are not aware of any claim held by the Internal Revenue Service ("IRS"). However, the IRS has filed Proof of Claim No. 6 in the DIV005 Case, asserting estimated partnership taxes in the amount of $200.00 for 2018 and 2022 taxes. In the event the Court determines the IRS holds an Allowed Class 1 IRS Tax Claim for secured or priority taxes, Debtors shall pay such Allowed Class 1 IRS Tax Claim in full in 52 equal monthly payments commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day

is not a Business Day) with interest accruing at the annual rate of 4% unless the IRS agrees to a lower interest rate or longer payment term. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 1 received by IRS after the Filing Date shall be applied to the principal tax obligation owed by Debtors pursuant to Class 1. Notwithstanding anything to the contrary herein, Debtors shall pay the full amount of the Allowed Class 1 IRS Tax Claim within 60 months of the Filing Date.

A failure by the Debtors to make a payment under Class 1 to the IRS pursuant to the terms of the Plan shall be an event of default as to the IRS. In the event of a default under Class 1, the IRS must send a Default Notice to Debtors in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtors' Attorney shall not be deemed receipt by Debtors of the required Default Notice. In the event of an uncured default in payments under Class 1 to the IRS and following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the IRS may (a) enforce the entire amount of its then outstanding Allowed Class 1 IRS Priority Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 1 IRS Priority Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of the IRS that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of the IRS, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of the IRS would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of the IRS and obligations and liability of Debtors or their property regarding any claim of the IRS against Debtors which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not timely asserted by the IRS in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtors reserve the right to pay any tax claim in full at any time.

The Claim of the Class 1 Creditor is not Impaired by the Plan and the holder of the Class 1 Claim is deemed to have accepted the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtors reserve the right to object to any and all claims.

**4.2 Class 2: Secured or Priority Tax Claim of Georgia Department of Revenue**

Debtors are not aware of any claim held by the Georgia Department of Revenue ("GDR"). The GDR has not filed a proof of claim in either of the Bankruptcy Cases. However, in the event the Court determines the GDR holds an Allowed Class 2 GDR Tax Claim for secured or priority

taxes, Debtor shall pay such Allowed Class 2 GDR Tax Claim in full in 52 equal monthly payments commencing on the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day) with interest accruing at the annual rate of 6.5% unless the GDR agrees to a lower interest rate or longer payment term. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 2 received by GDR after the Filing Date shall be applied to the principal tax obligation owed by Debtors pursuant to Class 2. Notwithstanding anything to the contrary herein, Debtors shall pay the full amount of the Allowed Class 2 GDR Tax Claim within 60 months of the Filing Date.

A failure by the Debtors to make a payment under Class 2 to the GDR pursuant to the terms of the Plan shall be an event of default as to the GDR. In the event of a default under Class 2, the GDR must send a Default Notice to Debtors in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtors' Attorney shall not be deemed receipt by Debtors of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the GDR may (a) enforce the entire amount of its then outstanding Allowed Class 2 GDR Priority Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 2 GDR Priority Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of GDR that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of GDR, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of GDR would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii) survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of GDR and obligations and liability of Debtors or their property regarding any claim of GDR against Debtors which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not timely asserted by GDR in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtors reserve the right to pay any tax claim in full at any time.

The Claim of the Class 2 Creditor is not Impaired by the Plan and the holder of the Class 2 Claim is deemed to have accepted the Plan.

Nothing herein shall constitute an admission as to the nature, validity, or amount of such claim. Debtors reserve the right to object to any and all claims.

### 4.3 Class 3: Priority and Secured Tax Claims of Governmental Units Not Otherwise Classified in the Plan

Class 3 shall consist of any Priority or Secured Claim of a governmental unit entitled to priority under 11 U.S.C. §507(a)(8) or §502(i), which are not otherwise specifically classified in the Plan ("Class 3 Governmental Unit Tax Claim"). Debtors are not aware of any Holders of Class 3 Governmental Unit Tax Claim not otherwise classified in the Plan. In the event there are Allowed Holders of Class 3 Governmental Unit Tax Claims, Debtors shall pay such Allowed Class 3 Government Unit Tax Claims at the rate of $100 per month commencing on the 28th day of the first full month following the Effective Date and continuing by the 28th day of each subsequent month (or the next Business Day if the 28th day is not a Business Day), with interest accruing at the annual rate of 4% (or at the rate otherwise as required by the Bankruptcy Code), with a final balloon payment on the 5th anniversary of the Filing Date (i.e. November 23, 2027) unless such holder agrees to a longer payment term, which such agreement may be communicated by continued acceptance of monthly payments after November 23, 2027. Any third-party payments or payments in excess of the scheduled distribution pursuant to Class 3 received by a holder shall be applied to the principal tax obligation owed by Debtor pursuant to Class 3. Debtors' Class 3 payments shall be applied (i) first to interest accruing under the Plan, (ii) second to the principal balance and (iii) then to interest which accrued prior to the Effective Date, if any. Debtors reserve the right to pay any Class 3 Governmental Unit Tax Claim in full at any time.

Debtors shall pay any claim of a Class 3 Claim Holder assessable, arising prior to the Filing Date or treated as arising prior to the Filing Date pursuant to 11 U.S.C. §502(i) on the terms herein, and holders of Class 3 Claims shall be permanently enjoined from seeking payment in excess of the amounts provided for in the Plan for such claims.

A failure by the Debtors to make a payment under Class 3 to a holder of a Class 3 Governmental Unit Tax Claim pursuant to the terms of the Plan shall be an event of default under Class 3 as to such holder. In the event of a default under Class 3, the applicable holder must send a Default Notice to Debtors in accordance with Article 2.3 of the Plan. Such Default Notice must contain the reason for the default and if such default is monetary, the amount of the default and amount necessary to cure the default and the address for payment, which will accept overnight deliveries. Receipt by Debtors' Attorney shall not be deemed receipt by Debtors of the required Default Notice. In the event of an uncured default following proper Default Notice procedures and opportunity to cure pursuant to Article 2.3 of the Plan, the Governmental Unit may (a) enforce the entire amount of its then outstanding Allowed Class 3 Governmental Unit Tax Claim; (b) exercise any and all rights and remedies it may have under applicable non-bankruptcy law regarding the Allowed Class 3 Governmental Unit Tax Claim; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

The amount of any claim of a holder of Class 3 Governmental Unit Tax Claim that is not assessable prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and the right of Governmental Unit, if any, to payment in respect thereto shall (i) be determined in the manner in which the amount of such Claim and the rights of Governmental Unit would have been resolved or adjudicated if the Bankruptcy Case had not been commenced, (ii)

survive after the Effective Date as if the Bankruptcy Case had not been commenced, and (iii) not be discharged pursuant to section 1141 of the Bankruptcy Code. However, the rights and treatment of Governmental Unit and obligations and liability of Debtor or its property regarding any claim of Governmental Unit against Debtor which was assessable prior to the Filing Date shall be treated and fixed in accordance with the Plan, and any additional or other claims assessable on or prior to the Filing Date or treated as arising before the Filing Date pursuant to 11 U.SC. §502(i), and not timely asserted by Governmental Unit in accordance with the Bankruptcy Code and the Plan and in all instances prior to entry of the Confirmation Order, shall be forever barred. Debtors reserve the right to pay any tax claim in full at any time.

The Holder of an Allowed Class 3 Governmental Unit Priority Tax Claim is impaired and entitled to vote to accept or reject the Plan. Nothing contained herein shall prohibit Debtors from objecting to the Class 3 Claims for any reason.

**4.4 Class 4: Secured Claim of Winder Property Partners, LLC**

Class 4 consists of the first-priority secured claim of Winder Property Partners, LLC ("WPP") in the approximate amount of $4,244,895.94 ("Class 4 Secured Claim") in the Div005 Case. On December 27, 2022, Truist Bank, N.A. ("Truist") filed proof of claim 13 asserting a secured claim in the amount of $9,271,341.14 (consisting of $4,244,895.94 for a line of credit note, $5,025,195.20 for a term note and $1,250.00 for an equipment line note) (collectively, the "Class 4 Secured Claim"). Truist's Class 4 Secured Claim is evidenced by the following documents:

1. $4,250,000 Promissory Note dated as of June 3, 2022, made payable by DIV005 LLC to the order of Truist Bank, together with Addendum to Promissory Note (Term SOFR) of even date ("Line of Credit Note"). **Interest Rate on Petition Date: SOFR + 2.05% per annum.**

2. Security Agreement dated as of June 3, 2022 from DIV005 LLC in favor of Truist Bank covering all now owned and hereafter acquired and wherever located property of DIV005 LLC as more particularly described therein.

3. UCC-1 Financing Statement number 038-2021-017689, filed on July 14, 2021 in the records of the Coweta County Clerk of Superior Court.

4. $5,117,000 Promissory note dated as of August 25, 2021, made payable by DIV005 LLC and Winder Property Partners, LLC, jointly and severally, to the order of Truist Bank, together with LIBOR Addendum to Promissory Note of even date ("Term Note"). **Interest Rate on Petition Date: LIBOR + 1.90%**

5. Georgia Security Deed, Security Agreement and Fixture Filing from Winder Property Partners, LLC to and in favor of Truist Bank dated as of August 25, 2021 and recording among the land records of Barrow County, Georgia in Deed Book 2547, pages 342-357

6. Assignment of Leases and Rents dated as of August 25, 2021 from Winder Property Partners, LLC to and in favor of Truist Bank dated as of August 25, 2021 and recorded among the land records of Barrow County, Georgia in Deed Book 2547, pages 358-366

7. Non-revolving Equipment Line of Credit ("Equipment Line Note")

Pursuant to the Truist Loan Documents, Truist held a first priority lien on all, or substantially all, of Debtor Div005's personal property (the "Class 4 Collateral"). WPP was liable for (i) the Term Note as signor of the Term Note (ii) for the Equipment Line Note as the signor of the Equipment Line Note and (iii) for the Line of Credit Note pursuant to the terms of the deed to secure debt from WPP in favor of Truist Bank dated as of August 25, 2021 and recorded in the land records of Barrow County, Georgia in Deed Book 2547, pages 342-357, which secured "Indebtedness incurred by [Winder Property Partners, LLC] or its affiliates."

WPP satisfied the claims of Truist on the Line of Credit Note, Term Note; and Equipment Line Note through the sale of that certain real property located at 700 Airport Road, Winder, Georgia.

As a result of the payment, on April 5, 2023, Truist assigned its claim to WPP and agreed to WPP's subrogation of Truist's claim on the Line of Credit Note to pursuant to 11 U.S.C. § 509(b) as a secured claim, including any Proof of Claim filed (DN 206). On April 6, the Clerk of Court for the United States Bankruptcy Court, Northern District of Georgia, filed its Notice of Filing Proof of Transfer of Claim (DN 207). No party in interest objected to the transfer of the claim.

Debtor remains indebted to WPP on the Line of Credit Note and Security Agreement pursuant to which the Debtor is indebted in the amount of approximately 4,244,895.94 for a line of credit note. WPP holds a first priority security interest in all now owned and hereafter acquired and wherever located property of DIV005 LLC. The Class 4 Secured Claim shall be paid as follows:

Interest shall continue to accrue at the rate of SOFR plus 2.05% per annum. Upon liquidation or sale of any of the Debtors assets outside the ordinary course of business, the net proceeds after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) shall be paid to WPP and applied to the Class 4 Secured Claim.

WPP shall release its lien on and security interest in the Class 4 Collateral for a payment of the then outstanding allowed Class 4 Secured Claim less any payment previously received and applied pursuant to this Plan. Upon request by Debtor, WPP shall promptly provide a payoff letter including the then outstanding balance of the Class 4 Secured Claim and an accounting including all credits and debits, including all payments received and their application.

WPP shall retain its lien and security interest in the Class 4 Collateral to the same priority and validity as held by Truist on the Filing Date; however, WPP shall release its lien on and security interest in the Class 4 Collateral for a payment of the then outstanding allowed Class 4 Secured Claim.

In the event that the Court enters an Order approving Debtor in Possession financing, in addition to the treatment in this class, Winder shall have all of the rights, remedies and payments set forth in any Order authorizing Debtor in Possession financing, including without limitation the right to payment under 507(b).

The holder of the Class 4 Secured Claim is impaired and entitled to vote to accept or reject the Plan.

**4.5 <u>Class 5: General Unsecured Claims</u>**

Class 5 shall consist of the general unsecured claims. Beginning on December 31, 2023 and continuing on that date each following year for five years following the Effective Date, Debtors shall pay the General Unsecured Creditors[1] equal annual pro-rata payments in a total amount as follows:

| | |
|---|---|
| 12/31/2023 | $25,000 |
| 12/31/2024 | $48,182 |
| 12/31/2025 | $76,012 |
| 12/31/2026 | $107,955 |
| 12/31/2027 | $125,479 |
| 12/31/2028 | $217,218 |
| **Total:** | **$600,000** |

Debtors anticipate, but do not warrant, the following Holders of Class 5 General Unsecured Claims attached hereto as Exhibit "A".

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

The holders of Class 5 Claims are impaired and entitled to vote to accept or reject the Plan.

[1] Some creditors listed their claim as secured on proofs of claims based on materialman's or mechanic's liens filed in the real estate records for certain projects where the Debtor(s) had been working. While the applicable creditor may hold a secured claim against the owner of the real estate, the creditor does not hold a secured claim against the Debtors. *See* 11 U.S.C. § 506. Thus, Debtor has classified such claims as unsecured.

**4.6 <u>Class 6: Unsecured Convenience Class</u>**

Class 6 shall consist of unsecured claims less than or equal to $10,000.00. Holders of Allowed Class 6 Claims (or which voluntarily reduce their Allowed claim to no less than $10,000.00) shall be paid twenty-five percent of their Allowed claim on the first anniversary of the Effective Date.

Debtors anticipate, but do not warrant, the following Holders of Class 6 General Unsecured Claims attached hereto as Exhibit "B".

The Claim of any Class 6 Creditor is Impaired by the Plan and the holder of the Class 6 Claim is entitled to vote to accept or reject the Plan.

Nothing contained herein shall prohibit the Debtors from objecting to the Class 6 Claims for any reason.

The holders of Class 6 Claims are impaired and entitled to vote to accept or reject the Plan.

**4.7 <u>Class 7: Interest Claims</u>**

Class 7 consists of Interest Claims. Upon entry of the Confirmation Order, the pre-petition membership interests of Div005 LLC and Metal Benders USA, LLC (collectively, the "Pre-petition Interests") shall be canceled.

New stock in the Reorganized Debtor in the name of Div005 LLC shall be issued ("Post-Petition Shares") 100% to WIP Corporate Services, LLC or its assignees in exchange for a cash infusion in the amount of $150,000.00 or more in its sole discretion. Such payment will be used to satisfy (i) the plan obligations of the Debtor (ii) any administrative claims and (iii) to support the general operations of the Debtor.

Nothing herein shall constitute an admission as to the nature, validity, or amount of claim. Debtors reserve the right to object to any and all claims.

The holders of Class 7 Claims are impaired and entitled to vote to accept or reject the Plan.

**4.8 <u>Sale Procedures</u>**

After the Confirmation Date, Debtors are authorized to sell or refinance their assets free and clear of liens, claims and encumbrances as set forth herein (the "Sale Procedures"). In the event the applicable assets are subject to secured claims, Debtors are only authorized to sell or refinance such property for any amount (a release amount) that is at least equal to the outstanding amount of Allowed Secured Claims securing such property (the "Release Amount"). The Release Amount, after payment of customary closing costs including broker fees and other items customarily attributed to the seller (in a sale) and borrower (in a refinancing), shall be paid at closing as follows: (i) first to cover any *ad valorem* property taxes associated with the particular

asset and (ii) then secured claims in order of priority. Any net proceeds from any such sale available after closing shall be paid to fund Debtors' other obligations as set forth in the Plan.

The Bankruptcy Court shall retain jurisdiction to reopen the Bankruptcy Case, if applicable, and resolve any disputes regarding the Sale Procedures herein.

Any sale or refinancing of property shall not alter the Debtor's obligations under this Plan.

**Article 5**
**Subchapter V Trustee; Effect of Substantive Consolidation**

5.1 *Subchapter V Trustee.*

The Subchapter V Trustee was appointed by the United States Trustee in the Metal Bender Case to perform the duties described in section 1183(b) of the Bankruptcy Code, one of which is to facilitate the development of a consensual plan of reorganization.

5.2 *Termination of the Subchapter V Trustee's Services.*

The services of the Subchapter V Trustee shall terminate upon the earlier of (i) "substantial consummation" of the Plan, as defined in section 1101(2) of the Bankruptcy Code and (ii) the Substantive Consolidation Date. Debtors shall directly make all payments required under this Plan, including the first payments required for substantial consummation of the Plan.

5.3 *Compensation of the Subchapter V Trustee.*

The Subchapter V Trustee shall be entitled to apply for reasonable compensation for the Subchapter V Trustee's fees and expenses under 11 U.S.C. §§ 330 and 503(b)(3) periodically through the earlier of (i) "substantial consummation" of the Plan and (ii) the Substantive Consolidation Date.

Debtors shall pay all compensation awarded the Subchapter V Trustee as mutually agreed by Debtors and the Subchapter V Trustee; or, absent such contrary agreement, Debtors shall pay any allowed fees in monthly payments of $500.00 each commencing on the fifteenth day of the month immediately following the month in which the order on the Subchapter V Trustee's application for compensation becomes a Final Order and continuing by the 15th day of each subsequent month until paid in full. To the extent not previously paid as set forth herein, unpaid accrued and approved compensation of the Subchapter V Trustee shall be paid in full by the Debtors as part of their Final Distribution.

5.4 *Effect of Substantive Consolidation*

On the Substantive Consolidation Date, Debtor Metal Benders shall be deemed to have withdrawn its election to be treated under Subchapter V of Chapter 11 of the Bankruptcy Code

and shall proceed under the other provisions of Chapter 11 of the Bankruptcy Code. All proofs of claims filed in the Metal Bender Case shall be treated as if filed in the Div005 Case.

5.5 Substantive Consolidation of these bankruptcy estates shall not alter the rights or remedies of administrative expense claimants, which payment shall be made within ten days of confirmation of a plan of reorganization or entry of an order allowing compensation of professionals, pursuant to 11 U.S.C. § 1129(a)(9).

**Article 6**
**Treatment of Unclassified Claims**

6.1 Summary. Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims against Debtors are not classified for purposes of voting on, or receiving Distributions under this Plan. Holders of such Claims are not entitled to vote on this Plan. All such Claims are instead treated separately in accordance with Article VI of the Plan and in accordance with the requirements set forth in section 1129(a)(9)(A) of the Bankruptcy Code.

With respect to potential Administrative Expense Claims, Debtors, pursuant to Court order, retained the law firm of Jones & Walden, LLC ("Firm") to serve as bankruptcy counsel. As set forth in the employment application and supporting documents filed in each of the Bankruptcy Cases, the Firm received a prepetition retainer in the amount of (i) $27,664.50 from Div005 and (ii) $28,127.00 from Metal Benders. As of confirmation, the fees and expenses incurred by the Firm will have exceeded the retainer in both cases. Debtors shall pay or cause to be paid any unpaid allowed Administrative Expense Claim held by the Firm on the Effective Date unless otherwise agreed to by the Firm. The Firm shall retain its security interest in the pre-petition retainer. The Firm retains its right to assert an attorney lien on any property administered under the Plan or otherwise recovered in this case. Debtors also anticipate paying the allowed fees and expenses of the counsel for the Official Committee of Unsecured Creditors at confirmation of the plan. Debtors are paying post-petition bills and does not expect any claims for unpaid post-petition goods and services other than possible professional fees for the Firm and counsel for the Unsecured Creditor Committee. Debtor Div005 will incur quarterly trustee fees which it intends to pay when due. For avoidance of doubt, such quarterly trustee fees will not be incurred for Debtor Metal Benders so long as Metal Benders is a Subchapter V debtor.

Debtor is also aware of potential Administrative Expense Claims owed to (i) OEG Building Materials in the amount of $55,766.36 and (ii) the claim of Vescom Materials, Inc in the amount of $150,000.00.

6.2 Administrative Expense Claims.

6.2.1 Subject to the provisions of sections 328, 330(a) and 331 of the Bankruptcy Code, each holder of an Allowed Administrative Expense Claim will be paid the full unpaid amount of such Allowed Administrative Expense Claim in Cash on the latest of (1) the Effective Date, (ii) as soon as practicable after the date on which such Claim becomes an Allowed Administrative Expense Claim, (iii) upon such other terms as may be agreed upon by such holder

and Debtor, or (iv) as otherwise ordered by the Bankruptcy Court; provided, however, that Allowed Administrative Expense Claims representing obligations incurred by Debtors in the ordinary course of business after the Filing Date, or otherwise assumed by Debtors on the Effective Date pursuant to this Plan, including any tax obligations arising after the Filing Date, will be paid or performed by Debtors when due in accordance with the terms and conditions of the particular agreements or non-bankruptcy law governing such obligations.

6.2.2 Except as otherwise provided in this Plan, any Person holding an Administrative Expense Claim, shall file a proof of such Administrative Expense Claim with the Bankruptcy Court within thirty (30) days after the Confirmation Date. At the same time any Person files an Administrative Expense Claim, such Person shall also serve a copy of the Administrative Expense Claim upon counsel for Debtors. Any Person who fails to timely file and serve a proof of such Administrative Expense Claim shall be forever barred from seeking payment of such Administrative Expense Claims by Debtors or the Estate.

6.2.3 Any Person seeking an award by the Bankruptcy Court of Professional Compensation shall file a final application with the Bankruptcy Court for allowance of Professional Compensation for services rendered and reimbursement of expenses incurred through the Effective Date within thirty (30) days after the Confirmation Date or by such other deadline as may be fixed by the Bankruptcy Court.

Debtors may pay professional fees incurred after Confirmation of the Plan without Court approval. Debtors shall pay all pre-confirmation fees of professionals as payment of same is approved by the Court.

## Article 7
## Means for the Implementation of the Plan

7.1 Parties Responsible for Implementation of the Plan. Upon confirmation, Debtors will be charged with administration of the Case. Debtors will be authorized and empowered to take such actions as are required to effectuate the Plan. Debtors will file all post-confirmation reports required by the United States Trustee's office. Debtors will also file the necessary final reports and will apply for a final decree as soon as practicable after substantial consummation and the completion of the claims analysis and objection process. Debtors shall be authorized to reopen this case after the entry of a Final Decree to enforce the terms of the Plan including for the purpose of seeking to hold a party in contempt or to enforce the confirmation or discharge injunction or otherwise afford relief to Debtors.

The Litigation Trustee will manage the Creditors Trust and will pursue any claims deemed viable for the benefit of the estates' creditors.

7.2 Sources of Cash for Distribution.

The source of funds for the payments pursuant to the Plan is a contribution of "new value" by the Debtor's owners pursuant to Class 7, on-going operations of the Debtors and any recoveries

of the Litigation Trust (as defined herein). A copy of the Debtors' anticipated budget is attached hereto as "**Exhibit A**".

The Plan provides that Debtors shall act as the Disbursing Agent to make payments under the Plan unless Debtors appoint some other entity to do so. Debtors may maintain bank accounts under the confirmed Plan in the ordinary course of business. Debtors may also pay ordinary and necessary expenses of administration of the Plan in due course.

6.3 Preservation of Causes of Action. In accordance with section 1123(b)(3) of the Bankruptcy Code, the bankruptcy estate will retain and may (but is not required to) enforce all Retained Actions by and through the Litigation Trust. After the Effective Date, the Litigation Trustee, in their sole and absolute discretion, shall have the right to bring, settle, release, compromise, or enforce such Retained Actions (or decline to do any of the foregoing), without further approval of the Bankruptcy Court, the Debtors or any third party. The Litigation Trustee (or any successors, in the exercise of their sole discretion), may pursue such Retained Actions. The failure of Debtors to specifically list any claim, right of action, suit, proceeding or other Retained Action in this Plan does not, and will not be deemed to, constitute a waiver or release by Debtors of such claim, right of action, suit, proceeding or other Retained Action, and the bankruptcy estate, through the Litigation Trustee and Trust, will retain the right to pursue such claims, rights of action, suits, proceedings and other Retained Actions in their sole discretion and, therefore, no preclusion doctrine, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or laches will apply to such claim, right of action, suit, proceeding or other Retained Actions upon or after the confirmation or consummation of this Plan. This Plan reserves all causes of actions for breach of any former or now existing agreement or otherwise. Neither the Disclosure Statement nor Plan shall be deemed a waiver of any right of the Litigation Trustee to collect any receivable or right to payment under any applicable laws. Debtors expressly reserves the right to exercise any and all remedies available to Debtors regarding their causes of action, claims or accounts receivable or rights to payment at law or in equity, at such time or times as the Litigation Trustee from time to time may elect. The Disclosure Statement and Plan are filed with a full reservation of rights. Any failure by Debtors to assert or set forth the occurrence of any other default or events of default which may have occurred shall not be deemed to be a waiver, release or estoppel of such other default or event of default. Debtors hereby expressly reserve the right to declare any such other default or event of default and to take such other action as Debtors may be entitled to applicable law, except insofar as they may pertain to the Litigation Trust. No delay on the part of Debtors in exercising any right or remedy shall operate as a waiver in whole or in part of any right or remedy. The Disclosure Statement and Plan are filed with a full reservation of rights.

6.4 Effectuating Documents, Further Transactions. Debtors are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such action as may be necessary, desirable or appropriate to effectuate and further evidence the terms and conditions of this Plan or to otherwise comply with applicable law.

6.5 Exemption from Certain Transfer Taxes and Recording Fees. Pursuant to 11 U.S.C. §1146(a), O.C.G.A. §48-6-65(a)(2), Ga. Comp. R. & Regs. R. 560-11-8.14 and any other

applicable laws, codes or regulations, any transfers from Debtors to any other Person or entity pursuant to or in contemplation of this Plan, or any agreement regarding the transfer of title to or ownership of any of Debtor's real or personal property will not be subject to any document recording tax, stamp tax, conveyance fee, sales tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment. Without limitation of the foregoing, the Confirmation Order may direct the appropriate state or local governmental officials or gents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

6.6 Further Authorization. Debtors shall be entitled to seek such orders, judgments, injunctions and rulings as it deems necessary or desirable to carry out the intentions and purposes, and to give full effect to the provisions, of this Plan.

6.7 Liabilities of Debtor. Debtors will not have any liabilities except those expressly stated or assumed under the Plan. Debtors will be responsible for all expenses incurred by Debtors in the ordinary course of business after the Filing Date, and those expenses will be paid in the ordinary course of business as they become due or as agreed upon by holders of the expense claim.

6.8 Div005 Creditors Trust and Litigation Trustee

On the Effective Date, the Debtor shall establish a litigation trust for the benefit of the Holders of Class 5 and Class 6 Unsecured Claims (the "DIV005 Creditors Trust or Litigation Trust"). Div005, LLC and Metal Benders USA, LLC shall execute the Trust Agreement ("Trust Agreement") and it shall become effective on the Effective Date. In accordance with the Trust Agreement, the DIV005 Creditors Trust shall be administered, subject to Court authorization, by the person to be named as the ("Litigation Trustee"). Subject to the Trust Agreement, the Litigation Trustee shall serve from and after the Effective Date until completion of their responsibilities. This section of the Plan sets forth certain of the rights, duties, and obligations of the Litigation Trustee and the terms of the DIV005 Creditors Trust, all of which will be more fully described in the Trust Agreement. In the event of any conflict between the terms of this section and the terms of the Trust Agreement, the terms of the Trust Agreement shall govern.

6.8.1 Duties and Powers of the Litigation Trustee

The DIV005 Creditors Trust shall be established solely for the purposes provided for in the Trust Agreement, which shall include, without limitation, administering, maintaining, and ultimately distributing the any recoveries made pursuant to any Retained Actions brought pursuant to 11 U.S.C. § 1123(b)(3)(B), as identified herein below, and the proceeds received (collectively, the "Trust Proceeds"). Such rights, powers, and duties granted to the Litigation Trustee shall vest on the Effective Date without the need to obtain further Court approval.

Except as explicitly provided in the Plan, the Debtor nor the Reorganized Debtor shall have any liability for any cost or expense of the DIV005 Creditors Trust except for payment of a

$15,000.00 retainer to a forensic accountant mutually agreeable to the Debtor and the Litigation Trustee. The Litigation Trustee may, however, look to any recoveries made to satisfy any fees, costs or expenses associated with the Litigation Trust. The Litigation Trustee shall distribute the Trust Proceeds in accordance with the Trust Agreement and the terms of the Plan.

The Litigation Trustee shall deposit any funds recovered in a non-interest bearing account and shall have neither the duty nor obligation to invest the monies pending any disbursements to creditors.

6.8.2 The DIV005 Creditors Trust

On and after (as applicable) the entry of the Confirmation Order, the Litigation Trustee shall be designated to pursue any and all claims and causes of action pursuant to 11 U.S.C. § 1123(b)(3)(B). The Litigation Trustee shall provide the Debtor and Winder Property Partners, LLC written notice prior to sending any demand or otherwise taking any action in regards to the Trust Assets. The Debtor and/or Winder Property Partners, LLC shall have thirty days from the date of any notice to assert any claims or lien rights concerning any claims or causes of action. Notice of such a dispute is effective upon delivery to the Litigation Trustee of correspondence identifying any contrary claim or lien interest, with a description of the nature of the claim or security interest asserted. Upon failure to deliver a conforming written dispute within thirty days of the issuance of the notice, any claim of lien or otherwise is waived and any related causes of action may be pursued by the Litigation Trustee and the proceeds shall inure to the benefit of the Litigation Trust. If there is a dispute concerning the extent of a lien or security interest and whether a cause of action is subject to lien rights, this issue will be determined by the Bankruptcy Court. The Litigation Trustee may not pursue any claims or causes of action until any such dispute is resolved by order of the Bankruptcy Court. The Creditors Trust may not pursue any causes of action subject to lien rights without also satisfying the associated liens, and the Litigation Trustee will not likely pursue any such claims that do not also benefit the estate's unsecured creditors. Specifically, the Litigation Trustee does not intend to pursue and claims or causes of action that are subject to the first-priority lien or security interests of Winder Property Partners, LLC, as successor in interest to Truist Bank, N.A. pursuant to its Notice of Filing Proof of Transfer of Claim (DN 207). Notice shall be provided via email and federal express (signature required) as follows:

| | |
|---|---|
| To Debtor: | Div005, LLC<br>c/o Registered Agent<br>Andrew J. Becker<br>Merbaum & Becker, P.C.<br>5755 North Point Pkwy., Suite 284<br>Alpharetta, Georgia 30022<br>Email: abecker@mbpclaw.com |
| To Winder Property Partners, LLC | Winder Property Partners, LLC<br>c/o Registered Agent<br>Andrew J. Becker |

Merbaum & Becker, P.C.
5755 North Point Pkwy., Suite 284
Alpharetta, Georgia 30022
Email: abecker@mbpclaw.com

With a Copy to: Jones & Walden, LLC
Attn: Cameron M. McCord
699 Piedmont Ave NE
Atlanta, Georgia 30308
Email: cmccord@joneswalden.com

To the extent that the Debtor or Winder Property Partners, LLC asserts that such claim is encumbered by a lien or security interest and an agreement cannot be reached with the Litigation Trustee, the Bankruptcy Court shall retain jurisdiction to resolve the dispute. Notice to the Litigation Trustee shall be sent to the business address designated by the Litigation Trustee for such purpose.

The Reorganized Debtor shall make available to the Litigation Trustee access, during normal business hours, upon reasonable notice, to personnel and books and records of the Reorganized Debtor to enable the Litigation Trustee to perform the Litigation Trustee's tasks under the Trust Agreement and the Plan, as provided in the Trust Agreement.

Interests in the DIV005 Creditors Trust shall be fixed upon confirmation of the Plan and shall consist of those allowed claims treated under the plan. Notwithstanding anything to the contrary, the Litigation Trustee shall be empowered to incorporate allowance or disallowance of claims treated under the Plan as a term of settlement or recovery on behalf of the estate.

6.8.3 Funding of DIV005 Creditors Trust Expenses

Upon entry of the Confirmation Order, the Reorganized Debtor shall fund a $15,000.00 retainer for the purposes of retaining a forensic accountant to analyze the claims of the DIV005 Creditors Trust. Any further expenses of the DIV005 Creditors Trust, including the fees of the Litigation Trustee, shall be funded from the Trust Proceeds, and shall not be funded by the Debtor or the Reorganized Debtor.

6.8.4 Termination of DIV005 Creditors Trust

Upon the final distribution of the Trust Assets, and completion of the Litigation Trustee's responsibilities, the Litigation Trustee shall be relieved of further responsibility.

6.9 Dissolution of the Committee

Upon entry of the Confirmation Order, the Committee shall be deemed dissolved and of no further force and effect. Notwithstanding the dissolution of the Committee, the Committee and its Professionals shall be entitled to apply for approval by the Bankruptcy Court of their Fee Claims.

## Article 7
## Distributions

7.1 Disbursing Agent. Unless otherwise provided for herein, all Distributions under this Plan shall be made by Debtors or their agent or the Litigation Trustee.

7.2 Distributions of Cash. Any Distribution of Cash made by Debtors or the Litigation Trustee pursuant to this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank or in any other form of cash or cash equivalent.

7.3 No Interest on Claims or Interests. Unless otherwise specifically provided for in this Plan, the Confirmation Order, or a postpetition agreement in writing between the Debtors and a Holder, postpetition interest shall not accrue or be paid on Claims, and no Holder shall be entitled to interest accruing on or after the Filing Date on any Claim. Additionally, and without limiting the foregoing, interest shall not accrue or be paid on any Disputed Claim in respect of the period from the Effective Date to the date a final determination is made when and if such Disputed Claim becomes an Allowed Claim.

7.4 Delivery of Distributions. The Distribution to a Holder of an Allowed Claim shall be made by Debtors or the Litigation Trustee (a) at the address set forth on the proof of claim filed by such Holder, (b) at the address set forth in any written notices of address change delivered to Debtors after the date of any related proof of claim, (c) at the addresses reflected in the Schedules if no proof of claim has been filed and Debtors have not received a written notice of a change of address, or (d) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records. If any Holder's Distribution is returned as undeliverable, no further Distributions to such Holder shall be made unless and until Debtors are notified by such Holder in writing of such Holder's then-current address, at which time Debtors shall recommence Distributions to such Holder without interest but further provided that (i) any distributions not claimed within 6 months of return shall be irrevocably retained by Debtors and (ii) such Holder shall waive its right to such Distributions. All Distributions returned to Debtors and not claimed within six (6) months of return shall be irrevocably retained by Debtors notwithstanding any federal or state escheat laws to the contrary.

If any Distribution on an Unsecured Claim ("Unsecured Distribution") is tendered by Debtors to a Holder of an Unsecured Claim and returned, refused or otherwise improperly returned ("Unsecured Distribution Refusal"), Debtors shall not be responsible for making any further Unsecured Distribution on account of such Unsecured Claim. Accordingly, in the event of an Unsecured Distribution Refusal, Debtors shall be relieved of any obligation to make said payment or Distribution and Debtors are relieved of any obligation to make further payments or Distributions on such Unsecured Claim under the Plan.

If any Distribution on a Secured Claim or Priority Claim ("Secured or Priority Distribution") is tendered by Debtors to a Holder of a Secured Claim or Priority Claim and returned, refused or otherwise improperly returned ("Secured or Priority Distribution Refusal"), the Holder of such Secured Claim or Priority Claim, as applicable, shall be deemed to have waived

its right to such tendered payment or Distribution and such tendered payment or Distribution shall be deemed satisfied. In the event of a Secured or Priority Distribution Refusal, any obligation of Debtors to make any additional or further payment on such Secured Claim or Priority Claim shall be tolled until such time as: (i) notice is provided to Debtors that the Holder of such Secured Claim or Priority Claim seeks to receive payments from Debtors on the Secured Claim or Priority Claim or otherwise seeks to enforce Debtor's obligations under the Plan or otherwise enforce the Secured Claim or Priority Claim and (ii) any dispute regarding the Secured or Priority Distribution Refusal and its implications is resolved by agreement of the parties or the Bankruptcy Court (the "Tolling Period"). Only in the event of such notice to Debtors shall Debtor's obligations to perform as to the applicable Secured Claim or Priority Claim resume. The Tolling Period shall: (i) extend the term of the payments on such Secured Claim or Priority Claim and (ii) bar any interest from accruing on the Secured Claim or Priority Claim until such time as any dispute regarding the Secured or Priority Distribution Refusal shall be resolved by a Final Order of the court. Notwithstanding anything in the Plan or otherwise to the contrary, no provision allowing the imposition of late fees, default interest, late charges, damages, or costs and fees against Debtors or the Debtors' property shall be applicable during the Tolling Period or any period during which a dispute regarding a Tolling Period is being resolved. For purposes of clarification, Debtors shall not be required to make any lump sum cure of payments or Distributions which would have otherwise come due during the Tolling Period or any period during which a dispute regarding a Tolling Period is unresolved, and Debtors shall recommence Distributions upon the resolution of such on the terms in the Plan as tolled.

7.5 Distributions to Holders as of the Record Date. All Distributions on Allowed Claims shall be made to the Record Holders of such Claims. As of the close of business on the Record Date, the Claims register maintained by the Bankruptcy Court shall be closed, and there shall be no further change in the Record Holder of any Claim. Debtors shall have no obligation to recognize any transfer of any Claim occurring after the Record Date. Debtors shall instead be entitled to recognize and deal for all purposes under this Plan with the Record Holders as of the Record Date.

7.6 Fractional Dollars. Any other provision of this Plan notwithstanding, Debtors shall not be required to make Distributions or payments of fractions of dollars. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, at Debtor's option the actual payment shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars or less being rounded down.

7.7 Withholding Taxes. Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions under this Plan shall be subject to any such withholding and reporting requirements.

## Article 8
## Procedures for Treating and Resolving Disputed Claims

8.1 Objections to Claims. Debtors shall be entitled to object to Claims, provided, however, that Debtors shall not be entitled to object to Claims (i) that have been Allowed by a

Final Order entered by the Bankruptcy Court prior to the Effective Date, or (ii) that are Allowed by the express terms of this Plan. The Litigation Trustee may seek to disallow, subordinate or otherwise impact claims treated under the Plan as part of any settlement or relief sought in pursuit of any claims or causes of action in the Litigation Trust.

8.2 No Distributions Pending Allowance. Except as otherwise provided herein, no Distributions will be made with respect to any portion of a Claim unless and until (i) no objection to such Claim has been filed, or (ii) any objection to such Claim has been settled, withdrawn or overruled pursuant to a Final Order of the Bankruptcy Court.

8.3. Resolution of Claims Objections. On and after the Effective Date, Debtors shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims without approval of the Bankruptcy Court.

## Article 9
## Provision for Assumption of Unexpired Leases and Executory Contracts

9.1 Provisions Regarding Executory Contracts.

As of the Effective Date of the Plan, Debtors will assume any executory contracts with (i) Ponderosa Consulting, LLC, and (ii) with Verizon Wireless.

Any unexpired leases or executory contracts which are not assumed under the Plan or are the subject of a pending motion to assume as of the Effective Date shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code on the Effective Date. Under the terms of the Plan, a proof of claim for damages arising from such rejection must be filed in compliance with the Bankruptcy Rules on or before sixty (60) days after the Confirmation Date. Any claims which are not timely filed will be disallowed and discharged.

## Article 10
## Effect of Plan on Claims and Interests

10.1 Vesting of Debtor's Assets. Upon confirmation, Debtors will retain all of the property of the estate free and clear of liens, claims, and encumbrances not expressly retained by Creditors under the Plan, except as provided herein. Any claims brought pursuant to the Litigation Trust shall not vest in the Reorganized Debtor, but rather will be brought and paid to creditors under the Plan pursuant to 11 U.S.C. § 1123(b)(3)(B), net of any fees, costs and expenses incurred by the Litigation Trustee or professionals in his employ. The Litigation Trustee will have the rights and powers to assert any and all Causes of Action (defined as all causes of action, choses in action, claims, rights, suits, accounts or remedies belonging to or enforceable by Debtors, including Avoidance Actions, whether or not matured or unmatured, liquidated or unliquidated, contingent or noncontingent, known or unknown, or whether in law or in equity, and whether or not specifically identified in Debtors' schedules). The Disclosure Statement and Plan are filed with a full reservation of rights. All claims and causes of action belonging to the Debtors are retained

and will be pursued by a Litigation Trustee pursuant to a Creditors Trust, established under the terms of the Plan of Reorganization. The Creditors Trust may not pursue any causes of action subject to lien rights without also satisfying the associated liens, and the Litigation Trustee will not likely pursue any such claims that do not also benefit the estate's unsecured creditors. Specifically, the Litigation Trustee does not intend to pursue and claims or causes of action that are subject to the first-priority lien or security interests of Winder Property Partners, LLC, as successor in interest to Truist Bank, N.A. pursuant to its Notice of Filing Proof of Transfer of Claim (DN 207). As of the earlier of the Effective Date and the entry of a Final Decree, Debtors may operate their business and use, acquire, and dispose of property and settle and compromise Claims or Interests without supervision of the Bankruptcy Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and Confirmation Order.

10.2. Discharge of Debtors. Pursuant to section 1141(d) of the Bankruptcy Code, except as otherwise specifically provided in the Plan or in the Confirmation Order, the Distributions and rights that are provided in the Plan shall be in complete satisfaction, discharge, and release of all Claims and Causes of Action against Debtors, whether known or unknown, including any and all liabilities of Debtor, Liens on Debtors' assets, obligations of Debtors, rights against Debtors, and Interests in Debtors or their Estates that arose prior to the Effective Date regardless of whether a claimant accepted or rejected the Plan.

10.3 Setoffs. Debtors or the Litigation Trustee may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that Debtors may have against such Holder; but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by Debtors of any such claim that Debtors may have against such Holder.

10.4 Exculpation and Limitation of Liability. The Litigation Trustee, Debtors', and the Litigation Trustee's current and/or post-Filing Date and pre-Effective Date members, officers, directors, employees, advisors, attorneys, representatives, financial advisors, investment bankers, or agents and any of such parties' successors and assigns, shall not have or incur, and shall be released from, any claim, obligation, cause of action, or liability to one another or to any Holder of any Claim or Interest, or any other party-in-interest, or any of their respective agents, employees, representatives, financial advisor, attorneys, or Affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the negotiation and filing of the Plan, the filing of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan, except for their willful misconduct, and in all respects shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. No Holder of any Claim or Interest, or other party in interest, none of their respective agents, employees, representatives, financial advisors, or Affiliates, and no successors or assigns of the foregoing, shall have any right of action against the parties listed in this provision for any act or omission in connection with, relating to, or arising out of the Bankruptcy Case, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Plan. Fees and expenses which Debtors owes to their

Professionals and Professionals engaged to represent the Official Committee of Unsecured Creditors are excluded from this Exculpation.

Endurance asserts that it holds claims against Div005and Div005's "present and future subsidiaries, affiliates, successors, executors, trustees, personal representatives and assigns, and any co-principals, partners or joint ventures of any Indemnitor or other form of common enterprise of an Indemnitor" (collectively, the "Endurance Indemnitors") based upon the terms of the Indemnity Agreement and common law rights of subrogation. The Debtors acknowledge and assert that nothing in the Plan, including but not limited to any third-party releases or exculpation clauses, shall affect in any way Endurance's rights against any non-debtor entity and/or non-debtor Endurance Indemnitors relating to any obligations associated with the Bonds issued by Endurance to Div005 the Indemnity Agreement and common law rights of subrogation. Endurance is deemed to have opted out of any release, exculpation and/or injunction provisions of the Plan that apply or could be interpreted to apply to Endurance and Endurance's rights or claims in any respect.

**10.5 Injunction. Upon entry of a Confirmation Order in this case, except as provided for in this Plan, the Confirmation Order shall act as a permanent injunction against any Person commencing or continuing any action, employment of process, or act to collect, offset, or recover any Claim or Cause of Action except as provided for under this Plan against: (1) Debtor, (2) the Litigation Trust or Trustee or (3) against any property of Debtor. Such injunction shall survive the closure of the Bankruptcy Case and this Court shall retain jurisdiction to enforce such injunction.**

10.6 Effect of Confirmation.

10.6.1 Binding Effect. On the Confirmation Date, the provisions of this Plan shall be binding on Debtor, the Estate, all Holders of Claims against or Interests in Debtor, and all other parties-in-interest whether or not such Holders are Impaired and whether or not such Holders have accepted this Plan. Creditors shall have no right to enforce a Claim against Debtor, the Litigation Trust or Trustee, even following a default under the Plan, except to the extent and amount that any Claim of such creditor is provided for and then due under the Plan.

10.6.2 Effect of Confirmation on Automatic Stay. Except as provided otherwise in this Plan, from and after the Effective Date, the automatic stay of § 362(a) of the Bankruptcy Code shall terminate.

10.6.3 Filing of Reports. Debtors shall file all reports and pay all fees required by the Bankruptcy Code, Bankruptcy Rules, U.S. Trustee guidelines, and the rules and orders of the Bankruptcy Court.

10.6.4 Post-Effective Date Retention of Professionals. Upon the Effective Date, any requirement that professionals comply with §§ 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date will terminate, and Debtors will employ and pay professionals in their ordinary course of business. The Litigation Trustee

shall not be required to seek authority to employ, compensate or reimburse professionals, vendors or other parties providing goods or services to the Litigation Trustee incident to his services.

**Article 11**
**Conditions Precedent**

11.1 Intentionally Deleted.

11.2 Conditions to the Effective Date. The following are conditions precedent to the occurrence of the Effective Date, each of which may be satisfied or waived in accordance with Article 11.3 of this Plan.

11.2.1 The Confirmation Order shall not have been vacated, reversed or modified and, as of the Effective Date, shall not have been stayed;

11.2.2 All documents and agreements to be executed on the Effective Date or otherwise necessary to implement this Plan shall be in form and substance that is acceptable to Debtors in their reasonable discretion;

11.2.3 Debtors shall have received any authorization, consent, regulatory approval, ruling, letter, opinion, or document that may be necessary to implement this Plan and that is required by law, regulation, or order.

11.2.4 The Court has entered an Order providing for the engagement of the Litigation Trustee, subject to those terms and conditions specified in the Litigation Trust document to be negotiated by the Litigation Trustee and the Debtor.

11.3 Waiver of Conditions to Confirmation or Consummation. The conditions set forth in Article 11.1 and Article 11.2 of this Plan may be waived, in whole or in part, by Debtors, excepting those pertaining to the Litigation Trustee who shall have discretion, without any notice to any other parties in interest or the Bankruptcy Court and without a hearing. The failure to satisfy or waive any condition to the Confirmation Date or the Effective Date may be asserted by Litigation Trustee or Debtors in their sole discretion regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any action or inaction by Debtor). The failure of Litigation Trustee or Debtors to exercise any of the foregoing rights shall not be deemed a waiver of any other rights, and each such right shall be deemed an ongoing right, which may be asserted at any time.

**Article 12**
**Retention and Scope of Jurisdiction of the Bankruptcy Court**

12.1 Retention of Jurisdiction. Subsequent to the Effective Date, the Bankruptcy Court shall have or retain jurisdiction for the following purposes:

12.1.1 To adjudicate objections concerning the allowance, priority or classification of Claims and any subordination thereof, and to establish a date or dates by which objections to Claims must be filed to the extent not established herein;

12.1.2 To liquidate the amount of any disputed, contingent or unliquidated Claim, to estimate the amount of any disputed, contingent or unliquidated Claim, to establish the amount of any reserve required to be withheld from any distribution under this Plan on account of any disputed, contingent or unliquidated Claim;

12.1.3 To resolve all matters related to the rejection, and assumption and/or assignment of any Executory Contract or Unexpired Lease of Debtor;

12.1.4 To hear and rule upon all Retained Actions, Avoidance Actions and other Causes of Action commenced and/or pursued by Debtor;

12.1.5 To hear and rule upon all applications for Professional Compensation;

12.1.6 To remedy any defect or omission or reconcile any inconsistency in this Plan, as may be necessary to carry out the intent and purpose of this Plan;

12.1.7 To construe or interpret any provisions in this Plan and to issue such orders as may be necessary for the implementation, execution and consummation of this Plan, to the extent authorized by the Bankruptcy Court;

12.1.8 To adjudicate controversies arising out of the administration of the Estates or the implementation of this Plan;

12.1.9 To make such determinations and enter such orders as may be necessary to effectuate all the terms and conditions of this Plan, including the Distribution of funds from the Estate and the payment of claims;

12.1.10 To determine any suit or proceeding brought by Debtors to recover property under any provisions of the Bankruptcy Code;

12.1.11 To hear and determine any tax disputes concerning Debtors and to determine and declare any tax effects under this Plan;

12.1.12 To determine such other matters as may be provided for in this Plan or the Confirmation Order or as may be authorized by or under the provisions of the Bankruptcy Code;

12.1.13 To determine any controversies, actions or disputes that may arise under the provisions of this Plan, or the rights, duties or obligations of any Person under the provisions of this Plan;

12.1.14 To adjudicate any suit, action or proceeding seeking to enforce any provision of, or based on any matter arising out of, or in connection with, any agreement pursuant to which Debtors sold any of their assets during the Bankruptcy Case; and

12.1.15 To enter a final decree.

12.1.16 To enforce and interpret any order or injunctions entered in this Bankruptcy Case.

<u>12.1.17 To adjudicate, administer and oversee any actions brought by the Litigation Trustee on behalf of the bankruptcy estate.</u>

<u>12.1.18 To resolve any dispute in regards to the Litigation Trust.</u>

12.2 Alternative Jurisdiction. In the event that the Bankruptcy Court is found to lack jurisdiction to resolve any matter, then the District Court shall hear and determine such matter. If the District Court does not have jurisdiction, then the matter may be brought before any court having jurisdiction with regard thereto. Notwithstanding anything to the contrary herein, Debtors shall be authorized to bring any action related to a lease, contract or account (including any account receivable due to Debtor) to which Debtors is a party in any state or local court having jurisdiction over such action.

12.3 Final Decree. The Bankruptcy Court may, upon application of Debtor, at any time after "substantial consummation" of the Plan as defined in §1101(2) of the Bankruptcy Code, enter a final decree in the case, notwithstanding the fact that additional funds may eventually be distributed to parties in interest. In such event, the Bankruptcy Court may enter an Order closing these cases pursuant to section 350 of the Bankruptcy Code, provided, however, that: (a) Debtors shall continue to have the rights, powers, and duties set forth in this Plan; (b) any provision of this Plan requiring the absence of an objection shall no longer be required, except as otherwise ordered by the Bankruptcy Court; and (c) the Bankruptcy Court may from time to time reopen the Bankruptcy Case if appropriate for any of the following purposes: (1) administering Assets; (2) entertaining any adversary proceedings, contested matters or applications Debtors has brought or brings with regard to the liquidation of Assets and the prosecution of Causes of Action or otherwise administering the Plan; (3) enforcing or interpreting this Plan or supervising its implementation; or (4) for other cause.

## Article 13
## Miscellaneous Provisions

13.1 Modification of the Plan. Except as to the provisions concerning the Litigation Trust or Trustee, Debtors shall be allowed to modify this Plan pursuant to section 1127 (and 1193 to the extent applicable to Metal Benders) of the Bankruptcy Code to the extent applicable law permits. Subject to the limitations contained in this Plan, pursuant to Article 13.1 of this Plan, Debtors may modify this Plan, before or after confirmation, without notice or hearing, or after such notice and hearing as the Bankruptcy Court deems appropriate, if the Bankruptcy Court finds that the Modification does not materially and adversely affect the rights of any parties in interest which

have not had notice and an opportunity to be heard with regard thereto. In the event of any modification on or before confirmation, any votes to accept or reject this Plan shall be deemed to be votes to accept or reject this Plan as modified, unless the Bankruptcy Court finds that the modification materially and adversely affects the rights of parties in interest which have cast said votes. Debtors reserves the right in accordance with section 1127 (and 1193 to the extent applicable to Metal Benders) of the Bankruptcy Code to modify this Plan at any time before the Confirmation Date.

13.2 Allocation of Plan Distributions Between Principal and Interest. To the extent that any Allowed Claim entitled to a Distribution under this Plan is composed of indebtedness and accrued but unpaid interest thereon, such distribution shall, to the extent permitted by applicable law, be allocated for United States federal income tax purposes to the principal amount of the Claim first and then, to the extent the consideration exceeds the principal amount of the Claim, to the portion of the Claim representing accrued but unpaid interest.

13.3 Applicable Law. Except to the extent that the Bankruptcy Code or the Bankruptcy Rules are applicable, the rights and obligations arising under this Plan shall be governed by the laws of the State of Georgia.

13.4 Preparation of Estate Returns and Resolution of Tax Claims. Debtors shall file all tax returns and other filings with governmental authorities and may file determination requests under section 505(b) of the Bankruptcy Code to resolve any Disputed Claim relating to taxes with a governmental authority.

13.5 Headings. The headings of the Articles and the sections of this Plan have been used for convenience only and shall not limit or otherwise affect the meaning thereof.

13.6 Revocation of Plan. Debtors reserve the right, unilaterally and unconditionally, to revoke and/or withdraw this Plan at any time prior to entry of the Confirmation Order, and upon such revocation and/or withdrawal this Plan shall be deemed null and void and of no force and effect.

13.7 No Admissions; Objection to Claims. Nothing in this Plan shall be deemed to constitute an admission that any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity or person as being the Holder of a Claim is the Holder of an Allowed Claim, except as expressly provided in this Plan. The failure of Debtors or the Litigation Trustee to object to or examine any Claim for purposes of voting shall not be deemed a waiver of Debtor's rights to object to or reexamine such Claim in whole or in part.

13.8 No Bar to Suits. Except as otherwise provided in Article 10 of this Plan, neither this Plan or confirmation hereof shall operate to bar or estop the Litigation Trustee from commencing any Cause of Action, or any other legal action against any Holder of a Claim or any individual, corporation, partnership, trust, venture, governmental unit, or any other form of legal entity, whether such Cause of Action, or any other legal action arose prior to or after the Confirmation Date and whether or not the existence of such Cause of Action, or any other legal

action was disclosed in any disclosure statement filed by Debtors in connection with this Plan or whether or not any payment was made or is made on account of any Claim. Without limitation, the Litigation Trustee retains and reserves the right to prosecute Retained Actions pursuant to 11 U.S.C. § 1123(b)(3)(B).

13.9 Exhibits/Schedules. All exhibits and schedules to this Plan, and all attachments thereto, are incorporated into and are a part of this Plan as if set forth in full herein.

13.10 Conflicts. In the event that provisions of the Disclosure Statement and provisions of this Plan conflict, the terms of this Plan shall govern.

## Article 14
## Tax Consequences

**TAX CONSEQUENCES RESULTING FROM CONFIRMATION OF THE PLAN CAN VARY GREATLY AMONG THE VARIOUS CLASSES OF CREDITORS AND HOLDERS OF INTERESTS, OR WITHIN EACH CLASS. SIGNIFICANT TAX CONSEQUENCES MAY OCCUR AS A RESULT OF CONFIRMATION OF THE PLAN UNDER THE INTERNAL REVENUE CODE AND PURSUANT TO STATE, LOCAL, AND FOREIGN TAX STATUTES. BECAUSE OF THE VARIOUS TAX ISSUES INVOLVED, THE DIFFERENCES IN THE NATURE OF THE CLAIMS OF VARIOUS CREDITORS, THE TAXPAYER STATUS AND METHODS OF ACCOUNTING AND PRIOR ACTIONS TAKEN BY CREDITORS WITH RESPECT TO THEIR CLAIMS, AS WELL AS THE POSSIBILITY THAT EVENTS SUBSEQUENT TO THE DATE HEREOF COULD CHANGE THE TAX CONSEQUENCES, THIS DISCUSSION IS INTENDED TO BE GENERAL IN NATURE ONLY. NO SPECIFIC TAX CONSEQUENCES TO ANY CREDITOR OR HOLDER OF AN INTEREST ARE REPRESENTED, IMPLIED, OR WARRANTED. EACH HOLDER OF A CLAIM OR INTEREST SHOULD SEEK PROFESSIONAL TAX ADVICE.**

**THE PROPONENT ASSUMES NO RESPONSIBILITY FOR THE TAX EFFECT THAT CONSUMMATION OF THE PLAN WILL HAVE ON ANY GIVEN HOLDER OF A CLAIM OR INTEREST. HOLDERS OF CLAIMS OR INTEREST ARE STRONGLY URGED TO CONSULT THEIR OWN TAX ADVISORS COVERING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN TO THEIR INDIVIDUAL SITUATION.**

**(Signatures Continued on Following Page)**

Respectfully submitted this 15th day of May, 2023

**DIV005 LLC**

*/s/ Harold Lerner*
By: Harold Lerner
Its: Manager

**METAL BENDERS USA, LLC**

/s/ *Harold Lerner*
By: Harold Lerner
Its: Manager

**JONES & WALDEN, LLC**

*/s/ Cameron M. McCord*
Cameron M. McCord
Georgia Bar No. 143065
699 Piedmont Avenue, NE
Atlanta, Georgia 30308
(404) 564-9300
Attorneys for Debtors in Possession

**Exhibit "A"**

*List of Class 5 Creditors and Anticipated Distributions*

| Class 5 Creditors | Claim Amount | Claim Location | Case | Estimated Claim | Total Projected Distribution | Note |
|---|---|---|---|---|---|---|
| Ahern Rentals | $ 596,640.89 | Sch | Div | $ 66,150.04 | $ 2,317.98 | |
| Aluma Systems | $ 48,338.73 | Sch | Div | $ 48,338.73 | $ 1,693.85 | |
| American Express 1002 | $ 169,674.40 | POC 15 | Div | $ 169,674.40 | $ 5,945.61 | |
| American Express 1007 | $ 21,627.06 | POC 16 | Div | $ 21,627.06 | $ 757.84 | |
| American Express 7002 | $ 166,351.31 | Sch | MB | $ 166,351.31 | $ 5,829.16 | |
| American Express Corporate | $ 44,862.01 | POC 10 | MB | $ 44,862.01 | $ 1,572.02 | |
| Archer Western Construction | Rejection Damages - Unknown | | | $ - | $ - | |
| Athens Gas & Welding Supply | $ 26,729.50 | POC 2 | MB | $ 26,729.50 | $ 936.64 | |
| Atlantic Hardware Supply | $ 11,622.86 | Sch | Div | $ 11,622.86 | $ 407.28 | |
| Baladez Drywall LLC | $ 169,266.66 | Sch | Div | $ - | $ - | Paid By Endurance Assurance Bond |
| Cardella Construction Co | Rejection Damages - Unknown | | | $ - | $ - | |
| Complete Structrual Consulting | $ 16,500.00 | Sch | Div | $ 16,500.00 | $ 578.18 | |
| Composite Construction Systems | $ 183,476.50 | POC 31 | Div | $ 183,476.50 | $ 6,429.25 | |
| D-MAC Industries | $ 22,673.30 | Sch | Div | $ 22,673.30 | $ 794.50 | |
| Endurance Assurance Corporation | $ 6,251,069.00 | POC 35 | Div | $ 182,419.84 | $ 6,392.22 | POC amount is for total penal bond amount. $182,419.84 is total amount paid on the bonds. |
| Express Employment Services | $ 19,789.56 | Sch | MB | $ 19,789.56 | $ 693.45 | |
| Falcon Metals | $ 601,050.78 | POC 5 | MB | $ 601,050.78 | $ 21,061.58 | |
| Florida Handling Systems | $ 156,391.20 | Sch | MB/Div | $ 156,391.20 | $ 5,480.15 | |
| Foundation Building Materials | $ 35,458.56 | POC 1 | MB | $ 35,458.56 | $ 1,242.51 | |
| General Welding Company, Inc. | $ 189,445.70 | POC 24 | Div | $ 189,445.70 | $ 6,638.42 | |
| Global Customs LLC | $ 15,750.00 | POC 6, 7 (MB); POC 2, POC 9, POC 11 (DIV) | Div | $ 15,750.00 | $ 551.90 | |
| Global Drywall Services LLC | $ 260,569.04 | POC 8 | MB | $ 260,569.04 | $ 9,130.67 | |
| Global Drywall Services LLC | $ 213,083.06 | POC 14 | Div | $ 213,083.06 | $ 7,466.70 | |
| Harey-Cleary Builders | Rejection Damages - Unknown | | | $ - | $ - | |
| Harold Lerner | $ 10,973.83 | Sch | MB | $ 10,973.83 | $ 384.54 | |
| Hilti Inc. | $ 16,016.74 | Sch | Div | $ 16,016.74 | $ 561.25 | |
| IDES-Global | $ 12,000.00 | Sch | Div | $ 12,000.00 | $ 420.50 | |
| Imagine, Inc. | $1,000,000 | POC | MB | $ - | $ - | |
| Infra-Metals | $ 274,572.89 | POC 14 | MB | $ 274,572.89 | $ 9,621.38 | |
| Interstate Steel Corporations | $ 12,250.00 | Sch | Div | $ 12,250.00 | $ 429.26 | |
| Jacovitch Industrial Construct | $ 30,907.00 | Sch | Div | $ 30,907.00 | $ 1,083.02 | |
| KLB Steel | $ 1,002,355.08 | POC 18/23 | MB/Div | $ 1,002,355.08 | $ 35,123.80 | |
| KSP General Contractors LLC | $ 1,253,452.00 | POC 40 | Div005 | $1,253,452 | $ 43,922.55 | |
| L&W Supply Corporation | $ 166,754.98 | Sch | Div | $ 166,754.98 | $ 5,843.31 | |
| L.F. Jennings, Inc. | $ 1,063,053.00 | POC 12 | Div | $ 1,063,053.00 | $ 37,250.73 | |
| Liberty Mutual Insurance | $ 32,276.85 | | MB | $ 32,276.85 | $ 1,131.02 | |
| Lightning Construction | $ 32,000.00 | Sch | Div | $ 32,000.00 | $ 1,121.32 | |
| LIW Ironworks Inc. | $ 91,464.07 | Sch | Div | $ - | $ - | L.F. Jennings POC 12 says paid by GC ($122,460.94). |
| Mapes Architectual Canopies | $ 32,188.00 | Sch | Div | $ 32,188.00 | $ 1,127.91 | |
| Merbaum & Becker | $ 12,427.39 | Sch | Div | $ 9,645.42 | $ 337.99 | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Metal Frame Pro, LLC | $ 1,579,699.78 | POC 19 | Div | $ 1,579,699.78 | $ 55,354.69 | |
| MLP Solutions, LLC | $ 175,286.67 | POC 1 | Div | $ - | $ - | L.F. Jennings POC 12 says MLP Solutions, LLC paid |
| National Search Group | $ 20,900.01 | POC 29 | Div | $ 20,900.01 | $ 732.36 | |
| New Millennium Building System | $ 573,279.80 | Sch | Div | $ 573,279.80 | $ 20,088.45 | |
| OEG Building Materials | $ 335,191.81 | Sch | Div | $ 335,191.81 | $ 11,745.55 | |
| Orlando Steel Framing Company, LLC | $ 1,190,079.78 | POC 18 | Div | $ 406,296.50 | $ 14,237.15 | |
| Orlando Steel Framing Company, LLC | $ 112,981.00 | POC 16 | MB | $ 112,981.00 | $ 3,959.00 | |
| OX Metal Worx LLC | $ 16,742.84 | Sch | Div | $ - | $ - | Paid By Endurance Assurance Bond |
| PIC Construction Inc. | $ 290,586.75 | Sch | Div | $ 290,586.75 | $ 10,182.53 | L.F. Jennings POC 12 says paid by GC |
| Pointe Residential Builders Milbank LLC | $ 1,428,500.00 | POC 22 | Div | $ 1,428,500.00 | $ 50,056.46 | |
| Ponderosa Consulting, LLC | $ 12,000.00 | Sch | Div | $ 12,000.00 | $ 420.50 | |
| ProcoreTechnologies, Inc. | $ 13,835.00 | Sch | Div | $ 13,835.00 | $ 484.80 | |
| Rabren General Contractors | $ 89,989.58 | POC 39 | Div | $ 89,989.58 | $ 3,153.35 | |
| Rabren General Contractors | $ 515,777.53 | POC 38 | Div | $ 515,777.53 | $ 18,073.50 | |
| Ramtool | $ 27,043.53 | Sch | Div | $ - | $ - | Paid by Schmid Construction |
| Reibus International Inc. | $ 33,289.20 | Sch | MB | $ 33,289.20 | $ 1,166.50 | |
| Schmid Construction | $ 2,107,857.00 | POC 33 | Div | $ 2,107,857.00 | $ 73,861.99 | |
| Service Partners LLC | $ 18,748.45 | Sch | MB | $ 18,748.45 | $ 656.97 | |
| Seth Jutan | $ 44,549.49 | Sch | Div | $ 44,549.49 | $ 1,561.07 | |
| Seth Jutan | $ 23,295.67 | Sch | MB | $ 23,295.67 | $ 816.31 | |
| SK Contractors | $ 277,350.81 | Sch | Div | $ 115,765.20 | $ 4,056.56 | |
| Staff Right Inc. | $ 23,737.65 | Sch | MB | $ 23,737.65 | $ 831.80 | |
| Standard Iron Works | $ 45,410.00 | Sch | Div | $ 45,410.00 | $ 1,591.22 | |
| Stars Transportation LLC | $ 64,489.45 | Sch | Div | $ 64,489.45 | $ 2,259.79 | |
| Steelmart Inc. | $ 155,280.83 | Sch | MB | $ 46,939.50 | $ 1,644.82 | |
| Structural Bolt & Manufacturing | $ 12,945.78 | Sch | Div | $ 12,945.78 | $ 453.64 | |
| Sunbelt Rentals | $ 57,686.01 | Sch | Div | $ 57,686.01 | $ 2,021.39 | |
| Tallgrass Freight Co, LLC | $ 103,100.00 | POC 7 | Div | $ 103,100.00 | $ 3,612.76 | |
| The Winter Construction Co. | $ 833,704.00 | POC 37 | Div | $ 833,704.00 | $ 29,214.05 | |
| Trehel Corporation | Rejection Damages - Unknown | | | $ - | $ - | |
| Trinity Rail | $ 74,616.97 | Sch | MB | $ - | $ - | Paid by Third Party |
| Turner Construction Company | Rejection Damages - Unknown | | | $ - | $ - | |
| USC7 INc | $ 68,006.10 | Sch | Div | $ 68,006.10 | $ 2,383.02 | |
| Vescom Structures, Inc. | $ 450,000.00 | | MB/Div | $ 450,000.00 | $ 15,768.57 | |
| Wagner Staffing | $ 37,946.66 | POC 13 | MB | $ 37,946.66 | $ 1,329.70 | |
| WCS Construction | $ 1,477,726.82 | POC 43 | Div | $ 1,477,726.82 | $ 51,781.43 | |
| Winder Property Partners | $ 272,607.47 | Sch | Div | $ 272,607.47 | $ 9,552.51 | |
| WIP Corporate Services | $ 29,272.00 | Sch | Div | $ 29,272.00 | $ 1,025.73 | |
| WIP Corporate Services | $ 47,997.83 | Sch | MB | $ 47,997.83 | $ 1,681.91 | |
| **Totals** | **$ 25,632,960.80** | | | **$ 17,122,665.37** | **$ 600,000.00** | |

**Exhibit "B"**

*List of Class 6 Creditors and Anticipated Distributions*

| Class 6 Creditors | Claim Amount | Claim Location | Case | Estimated Claim | Claim Distribution |
|---|---|---|---|---|---|
| Adecco Employment Services | $ 8,204.28 | Sch | MB | $ 8,204.28 | $ 2,051.07 |
| Airgas USA, LLC | $ 701.03 | POC 12 | MB | $ 701.03 | $ 175.26 |
| Alexandria Renew Enterprises | $ 131.74 | Sch | Div | $ 131.74 | $ 32.94 |
| American Water | $ 0.95 | Sch | Div | $ 0.95 | $ 0.24 |
| American Welding & Gas, Inc | $ 110.81 | Sch | MB | $ 110.81 | $ 27.70 |
| Baker Tilly US, LLP | $ 7,050.00 | Sch | Div | $ 7,050.00 | $ 1,762.50 |
| Baker Tilly US, LLP | $ 6,300.00 | Sch | MB | $ 6,300.00 | $ 1,575.00 |
| Beck Collective, Inc. | $ 5,100.00 | Sch | MB | $ 5,100.00 | $ 1,275.00 |
| Blossman Gas and Applicance | $ 1,565.41 | Sch | MB | $ 1,565.41 | $ 391.35 |
| Boswell Oil Company | $ 2,211.32 | Sch | MB | $ 2,211.32 | $ 552.83 |
| Boswell Supply | $ 1,209.76 | Sch | MB | $ 1,209.76 | $ 302.44 |
| Bright View Landscape Services | $ 7,600.00 | Sch | MB | $ 7,600.00 | $ 1,900.00 |
| Chastains Janitorial Supply | $ 892.38 | Sch | MB | $ 892.38 | $ 223.10 |
| Comcast | $ 157.24 | Sch | Div | $ 157.24 | $ 39.31 |
| Commonwealth Steel | $ 9,480.00 | Sch | Div | $ 9,480.00 | $ 2,370.00 |
| Complete Structural Consulting | $ 8,700.00 | Sch | MB | $ 8,700.00 | $ 2,175.00 |
| Corporate Accommodations NW FL | $ 3,188.60 | Sch | Div | $ 3,188.60 | $ 797.15 |
| De Lage Landen | $ 1,245.25 | Sch | MB | $ 1,245.25 | $ 311.31 |
| Fastenal Company | $ 547.17 | Sch | MB | $ 547.17 | $ 136.79 |
| Fastenal Company | $ 308.42 | POC 20 | Div | $ 308.42 | $ 77.11 |
| Folia Group LLC | $ 4,597.72 | Sch | MB | $ 4,597.72 | $ 1,149.43 |
| General Welding Company Inc. | $ 7,020.00 | POC 19/25 | MB/Div | $ 7,020.00 | $ 1,755.00 |
| Georgia Power | $ 17.23 | Sch | MB | $ 17.23 | $ 4.31 |
| Gulf State Saw & Machine | $ 2,751.61 | Sch | MB | $ 2,751.61 | $ 687.90 |
| Harbor Compliance | $ 1,034.54 | Sch | Div | $ - | $ - |
| Heyden Supply | $ 4,189.06 | Sch | MB | $ 4,189.06 | $ 1,047.27 |
| Hill's Ace Hardware | $ 755.76 | Sch | MB | $ 755.76 | $ 188.94 |
| Hilti Inc. | $ 1,071.48 | Sch | MB | $ 1,071.48 | $ 267.87 |
| Hoist and Crane Company | $ 3,627.47 | Sch | MB | $ 3,627.47 | $ 906.87 |
| Kwest Logistics LLC | $ 8,300.00 | Sch | Div | $ 8,300.00 | $ 2,075.00 |
| L2L Commercial Cleaning LLC | $ 800.00 | Sch | MB | $ 800.00 | $ 200.00 |
| Liberty Mutual Insurance | $ 6,953.91 | Sch | Div | $ 6,953.91 | $ 1,738.48 |
| Link2City, Inc. | $ 5,850.00 | Sch | Div | $ - | $ - |
| Magna Steel Detailing Services | $ 666.00 | Sch | Div | $ 666.00 | $ 166.50 |
| Managed IT Systems, Inc. | $ 4,094.00 | POC 21 | Div | $ 4,094.00 | $ 1,023.50 |
| Managed IT Systems, Inc. | $ 3,300.00 | POC 17 | MB | $ 3,300.00 | $ 825.00 |
| Mat1820 LLC | $ 1,100.13 | Sch | MB | $ 1,100.13 | $ 275.03 |
| Metro Trailer | $ 5,060.00 | Sch | MB | $ 5,060.00 | $ 1,265.00 |
| Mopro.com | $ 198.00 | Sch | MB | $ 198.00 | $ 49.50 |
| National Search Group | $ 6,666.67 | Sch | Div | $ 6,666.67 | $ 1,666.67 |
| Northeast Georgia Rentals | $ 5,619.65 | Sch | MB | $ 5,619.65 | $ 1,404.91 |
| O'Donnell Metal Deck, LLC | $ 4,955.51 | Sch | Div | $ 4,955.51 | $ 1,238.88 |
| P1 Finance | $ 3,551.54 | Sch | Div | $ 3,551.54 | $ - |
| Panel Steel Inc. | $ 9,500.00 | Sch | Div | $ 9,500.00 | $ 2,375.00 |
| Ponderosa Consulting, LLC | $ 6,000.00 | Sch | MB | $ 6,000.00 | $ 1,500.00 |

| | | | | | |
|---|---|---|---|---|---|
| Posner Industries | $ 1,417.03 | Sch | Div | $ 1,417.03 | $ 354.26 |
| Progress Residential | $ 5,131.34 | Sch | MB | $ 5,131.34 | $ 1,282.84 |
| Promax Management | $ 6,190.00 | Sch | Div | $ 6,190.00 | $ 1,547.50 |
| Republic Services | $ 1,357.16 | Sch | MB | $ 1,357.16 | $ 339.29 |
| Simpson Strong-Tie | $ 7,297.81 | Sch | Div | $ 7,297.81 | $ 1,824.45 |
| Steel Mart, Inc. | $ 1,467.50 | Sch | Div | $ 1,467.50 | $ 366.88 |
| Tallgrass Freight Co., LLC | $ 5,800.00 | Sch | MB | $ 5,800.00 | $ 1,450.00 |
| TEG Lease | $ 1,598.16 | Sch | Div | $ 1,598.16 | $ 399.54 |
| The Rigging Box, Inc. | $ 1,379.97 | Sch | Div | $ 1,379.97 | $ 344.99 |
| Uline | $ 2,659.49 | Sch | MB | $ 2,659.49 | $ 664.87 |
| United Rentals | $ 725.46 | Sch | MB | $ 725.46 | $ 181.37 |
| United Rentals | $ 579.50 | Sch | Div | $ 579.50 | $ 144.88 |
| US Tesla Steel | $ 3,024.00 | Sch | Div | $ 3,024.00 | $ 756.00 |
| USA Mobile Drug Testing | $ 1,269.00 | Sch | MB | $ 1,269.00 | $ 317.25 |
| Verizon Connect Flee USA | $ 160.50 | Sch | MB | $ 160.50 | $ 40.13 |
| VideoJet Technologies | $ 1,041.29 | Sch | MB | $ 1,041.29 | $ 260.32 |
| Willscot | $ 940.67 | Sch | Div | $ 940.67 | $ 235.17 |
| Winder Property Partners | $ 844.59 | Sch | MB | $ 844.59 | $ 211.15 |
| Windstream | $ 111.36 | Sch | MB | $ 111.36 | $ 27.84 |
| **Total** | **$ 205,379.47** | | | **$ 198,494.93** | **$ 48,735.85** |